**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| CLAYTON C. CRAINE, | ) | No. ED CV 15-2344-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 13, 2015, seeking review of the Commissioner's[1] denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 9, 2015, and December 11, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on April 3, 2017, that addresses their positions concerning the disputed issues

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on August 24, 1963.  [Administrative Record ("AR") at 127, 337.]  He has past relevant work experience as a delivery driver-courier and a warehouse worker.  [AR at 336, 369.]

On April 25, 2007, plaintiff protectively filed an application for SSI payments, alleging that he has been unable to work since April 20, 2007.  [AR at 127.]  After his application was denied initially and upon reconsideration, and after a hearing, an unfavorable decision was issued on May 4, 2009.  [AR at 435-42.]  Plaintiff filed a complaint in this Court in case number CV 09-8851-PLA, and on January 3, 2011, the Court remanded the matter for further proceedings.  [AR at 447-57.]  On July 11, 2011, December 20, 2011, and March 28, 2013, three hearings were held after remand by a different ALJ, at each of which plaintiff appeared represented by an attorney and testified on his own behalf.  [AR at 349-80, 381-96, 397-400.]  A vocational expert ("VE") also testified at the March 28, 2013, hearing.  [AR at 369, 375-78, 380.]  On April 26, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability since April 20, 2007, the date the application was filed.  [AR at 326-38.]  Plaintiff requested review of the ALJ's decision by the Appeals Council, and when the Appeals Council denied plaintiff's request for review on September 18, 2015 [AR at 312-17], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 20, 2007, the application date.  [AR at 328.]  At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [L]umbar disc disease; status-post anterior and posterior L5-S1 spinal fusion; cervical strain; status-post carpal tunnel syndrome release right wrist and hand; chronic prepatellar bursitis, left knee; and left shoulder strain; gout; and lupus.

[Id.]   She also found that plaintiff's medically determinable impairment of depression was

nonsevere. [AR at 329.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 330.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 416.967(b),[3] with the following exceptions:

> [L]ifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6 hours in an 8-hour workday with customary breaks; sitting 6 hours in an 8-hour workday with customary breaks; he would need to alternate positions between sitting and standing at 45-minute intervals for one to five minutes at the work station; he can occasionally kneel, stoop, crawl, and crouch; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can frequently use the upper extremities, bilaterally for fine and gross manipulations; he would be able to occasionally use the upper extremities for overhead reaching, i.e., above shoulder level; he would be able to use the upper and lower extremities for forceful pushing and pulling within the weight restrictions noted above; he would need to avoid concentrated exposure to extremely cold temperatures and pulmonary irritants such as dusts, fumes, gases, and odors; he would be able to sustain concentration and attention, persistence and pace in at least two hour blocks of time; he would be able to interact appropriately to coworkers, supervisors, and the general public; and due to pain and side effects of medication he would not be able to do complex or detailed tasks, but would remain capable of understanding, remembering, and carrying out unskilled tasks.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a delivery driver-courier. [AR at 336.] The ALJ made an alternative finding at step five that there are other jobs existing in the national economy that plaintiff is also able to perform, including work as a "checker I" (Dictionary of Occupational Titles ("DOT") No. 222.687-010), "assembl[er] of small parts" (DOT No. 706.684-022), and

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

1  "counter clerk" (DOT No. 249.366-010).  [AR at 338, 378.]  Accordingly, the ALJ determined that

2  plaintiff was not disabled at any time since April 20, 2007, the date the application was filed.  [AR

3  at 338.]

4

5                                              **V.**

6                                     **THE ALJ'S DECISION**

7          Plaintiff contends that the ALJ erred when she:  (1) determined that plaintiff could perform

8  his past work or alternative work; and (2) rejected plaintiff's subjective symptom testimony.  [JS

9  at 5.]   As set forth below, the Court agrees with plaintiff, in part, and remands for further

10  proceedings.

11

12  **A.      REASONING LEVEL 2**

13          According to the DOT, occupations with reasoning level 1 require the ability to "apply

14  commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with

15  standardized situations with occasional or no variables in or from these situations encountered on

16  the job."  [JS at 7; DOT App. C.]  In contrast, reasoning level 2 requires the individual to carry out

17  "*detailed* but uninvolved written or oral instructions."  [JS at 6-9 (emphasis added); DOT App. C.]

18  Plaintiff contends that because the ALJ determined that he is not able to do complex or detailed

19  tasks, he is unable to perform his past relevant work, or any of the alternative work identified by

20  the VE, because each of those occupations requires the ability to perform *detailed* tasks at

21  reasoning level 2.

22          Defendant counters that "the ALJ's decision overall indicates that her formulation

23  [precluding plaintiff from complex or detailed tasks] is akin to [being able to perform] 'simple

24  repetitive tasks'"; that notwithstanding the DOT classification of his past relevant work as requiring

25  reasoning level 2, plaintiff can perform his past work as actually performed as he described it

26  because "nothing in Plaintiff's description [of his past work] was complex or detailed, nor did it

27  require skilled work"; that because the mental demands of unskilled work include the ability to

28  understand, carry out, and remember simple instructions, "there is no conflict between unskilled

                                              6

work and Reasoning Level Two in the DOT"; and "looking at the ALJ's decision as a whole, a reasonable person could find that [the ALJ] did not intend to limit Plaintiff to Reasoning Level One in her RFC finding." [JS at 9-14.]

Preliminarily, the Court notes that the Administration defines "unskilled work" -- or unskilled "tasks" as the ALJ stated here -- as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a). Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people . . . ." Soc. Sec. Ruling 85-15. All jobs listed in the DOT have both general education development ("GED") reasoning levels and SVP levels, which are "two separate vocational considerations." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." Id. Thus, defendant's argument -- that "Plaintiff's past relevant work as a delivery driver, as well as [the] three alternative representative occupations were classified in the DOT as SVP 2" [JS at 11], and, therefore, "there is no conflict between unskilled work and Reasoning Level Two in the DOT" [JS at 12] -- improperly conflates the jobs' SVP and GED reasoning levels.

Although a limitation to simple repetitive tasks may be consistent with reasoning level 2, Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015), a limitation to one- to two-step instructions may not be consistent. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003-04 (9th Cir. 2015) (finding an apparent conflict between the claimant's RFC limitation to "one to two step tasks" and the three representative jobs the ALJ concluded she was capable of performing, each of which required reasoning level 2). In Rounds, the ALJ confirmed at the outset of the VE's testimony that he would assume the VE's testimony "is based on [his] knowledge, education, training, and experience consistent with the DOT," unless the VE told him otherwise. Id. at 1003. In his decision, the ALJ concluded that the VE's testimony -- that the hypothetical individual with a limitation to one- to two-step tasks could perform reasoning level 2 occupations -- was consistent

with the DOT, "and never directly addressed whether [the claimant's] limitation to one- to two-step tasks was consistent with jobs requiring Level Two reasoning and, if so, why." Id. Noting that the RFC limitation was worded in a similar fashion to the requirements for level 1 reasoning, the court rejected the Commissioner's argument that Rounds' inability to complete multi-step tasks "does not necessarily contradict the VE's opinion that [Rounds] has the ability to follow detailed *instructions*, as required in Level Two Jobs." Id. The court then specifically noted that "[o]nly tasks with more than one or two steps would require 'detailed' instructions . . . [a]nd these are precisely the kinds of tasks Rounds' RFC indicates she cannot perform." Id. The Ninth Circuit found that there was an apparent conflict between the claimant's RFC limitation to "one to two step tasks," and the demands of reasoning level 2. Id. at 1003. Because the ALJ had not recognized the apparent conflict, the ALJ had not asked the VE to explain the conflict and the Ninth Circuit remanded the matter for further proceedings. Id. at 1003-04. The court also found that the ALJ's failure to reconcile the apparent conflict was not harmless because he "did not merely restrict Rounds to 'simple' or 'repetitive' tasks. Instead, he expressly limited her to 'one to two step tasks,' apparently to address her 'moderate' problems with memory and concentration." Id. at 1004.

Here, the ALJ did not explicitly limit plaintiff either to one- or two-step instructions or to simple repetitive tasks. Instead, she found plaintiff *precluded* from "complex or detailed tasks." [AR at 329.] She specifically explained in her decision that she "included limitations in the [RFC] that due to pain and side effects of medication [plaintiff] would not be able to do complex or detailed tasks but would remain capable of understanding, remembering, and carrying out unskilled tasks to generously consider any reported memory problems." [AR at 329.] This limitation was included in the hypothetical to the VE. [AR at 376.] Notwithstanding the ALJ's "[a]typical formulation" of plaintiff's RFC limitation [see JS at 10], the Court finds that Rounds is analogous and follows its determination that reasoning level 2 occupations, which require the individual to carry out "*detailed* but uninvolved written or oral instructions," require more than one or two steps to perform the occupation. See Rounds, 807 F.3d at 1003 ("[o]nly tasks with more than one or two steps would require 'detailed' instructions," such as required by reasoning level 2 occupations). Thus, as in Rounds, there is an apparent conflict between plaintiff's RFC limitation

8

to "[non]-*detailed* or [non]-complex tasks" and occupations with level 2 reasoning, which, by definition, involve "detailed" instructions. The ALJ did not recognize the apparent conflict between plaintiff's RFC and the demands of level 2 reasoning and, therefore, the VE did not address whether the conflict could be resolved. In fact, although the ALJ asked the VE to confirm that his consideration of the "sit/stand option" was based on his "professional training and experience," she never confirmed with the VE that his testimony was otherwise consistent with the DOT. [See AR at 369, 375-78, 380.] As in Rounds, the ALJ's failure to address the error was not harmless.

Defendant also argues that the delivery driver occupation as plaintiff actually performed it, as described by plaintiff, does not "require[] activities exceeding [plaintiff's] RFC." [JS at 10.] She notes that nothing in plaintiff's description of that work, which consisted of delivering paperwork to real estate offices or delivering prescriptions to retirement homes [see AR at 167-68, 389], "was complex or detailed, nor did it require skilled work." [JS at 11.] Defendant contends, therefore, that plaintiff has not proved that he was unable to perform this job as actually performed and, therefore, "the Court should affirm on this basis alone." [Id.] The only discussion on this issue by the ALJ, however, noted that the delivery driver-courier occupation as defined in the DOT "is a *light, unskilled* occupation as generally performed pursuant to the DOT *and* as actually performed by [plaintiff]." [AR at 336 (emphases added).] This appears to be based on the VE's testimony:

> [F]rom his testimony and a review of the case file, this gentleman has worked as a warehouse worker, in the DOT at 922.687-058, SVP: 2, unskilled, and medium work, however done at the very heavy work category. Further, he worked as a delivery driver. In the DOT at 230.663010, SVP: 2, unskilled, light work and *that's what I found.*

[AR at 369 (emphasis added).] Thus, neither the ALJ nor the VE provided any evidence or discussion reflecting that this occupation as *actually* performed by plaintiff involved something less than reasoning level 2 abilities. Because "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking," Bray v. Astrue, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added; citation omitted), the Court cannot affirm the ALJ's decision on a ground that the ALJ did not consider in

1  making his decision.  See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot

2  affirm the decision of an agency on a ground that the agency did not invoke in making its

3  decision.").

4          Remand is warranted on this issue.

5

6  **B.      SUBJECTIVE SYMPTOM TESTIMONY**

7          Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's

8  subjective symptom testimony. [JS at 14-23.] Specifically, the ALJ discounted plaintiff's subjective

9  symptom testimony as follows:

10         The undersigned finds [plaintiff's] allegations concerning the intensity, persistence
           and limiting effects of his symptoms are less than fully credible. [Plaintiff] attempted
11         to minimize his daily activities. [Plaintiff] alleged that he can only lift up to 5 pounds,
           walk 20 yards, and sit up to 30 minutes until he experiences significant pain.  The
12         degree of self-asserted limitations is not supported by the objective medical
           evidence including the diagnostic findings, which indicates an attempt by [plaintiff]
13         to exaggerate the severity of his symptoms.  Even if [plaintiff's] daily activities are
           truly as limited as alleged, it is difficult to attribute that degree of limitation to
14         [plaintiff's] medical condition, as opposed to other reasons, in view of the relatively
           benign medical evidence and other factors discussed in this decision.  [Plaintiff]
15         testified that he is homeless and lived in his van.  It appears the limited range of
           daily activities is a lifestyle choice and not due to any established impairment.
16
           Prior to his alleged onset date, [plaintiff] did undergo surgeries for his alleged
17         impairments, which certainly suggests that the symptoms were genuine.  While that
           fact would normally weigh in [plaintiff's] favor, it is offset by the fact that the record
18         reflects that the surgery was generally successful in relieving the symptoms. . . . The
           credibility of [plaintiff's] allegations regarding the severity of his symptoms and
19         limitations is diminished because those allegations are greater than expected in light
           of the objective evidence of record.
20

21  [AR at 331-32.]

22         "To determine whether a claimant's testimony regarding subjective pain or symptoms is

23  credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

24  1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

25  objective medical evidence of an underlying impairment 'which could reasonably be expected to

26  produce the pain or other symptoms alleged.'"  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

27  1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks

28  omitted).  If the claimant meets the first test, and the ALJ does not make a "finding of malingering

based on affirmative evidence thereof" (Robbins, 466 F.3d at 883), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Treichler, 775 F.3d at 1102; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The ALJ's 2013 decision was issued before March 28, 2016, when

11

1   SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling

2   including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5

3   n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to

4   the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016)

5   (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen v. Chater, 80 F.3d

6   1273, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised

7   regulations] because the new regulations are consistent with the Commissioner's prior policies and

8   with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993)

9   (because regulations were intended to incorporate prior Social Security Administration policy, they

10  should be applied retroactively)). Here, SSR 16-3p on its face states that it is intended only to

11  "clarify" the existing regulations. However, because this matter is being remanded for

12  consideration of other issues, the Court need not resolve the retroactivity issue. Notwithstanding

13  the foregoing, SSR 16-3p shall apply on remand.

14      Plaintiff argues that none of the reasons provided by the ALJ for discounting his testimony

15  is specific and legitimate, let alone clear and convincing [JS at 14-23], and defendant counters

16  these arguments. [JS at 23-27.] Because the matter is being remanded for reconsideration of

17  whether plaintiff can perform his past relevant work or alternative occupations and, because

18  subsequent to the ALJ's decision the regulations governing the analysis of subjective symptom

19  complaints were clarified by SSR 16-3p, the ALJ on remand shall also reconsider plaintiff's

20  subjective symptom testimony and provide specific, clear and convincing reasons for discounting

21  plaintiff's subjective symptom testimony if warranted, applying SSR 16-3p. See Treichler, 775

22  F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and

23  specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 493-

24  94 (the ALJ must identify the testimony he found not credible and "link that testimony to the

25  particular parts of the record" supporting his non-credibility determination).

26  /

27

28

# VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective symptom allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.[4] Next, the ALJ shall obtain VE testimony to resolve the inconsistency between the ALJ's RFC determination that plaintiff is precluded from complex or detailed tasks and the DOT job requirements for his past relevant work as a delivery driver-courier and/or for the three alternative occupations as set forth in the ALJ's April 26, 2013, decision, all of which require reasoning level 2 abilities. Next, based on the VE's testimony regarding the apparent inconsistency between plaintiff's preclusion from complex or detailed tasks and the DOT jobs requiring level 2 reasoning skills, the ALJ shall determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work as a delivery driver-

---

[4] Nothing herein is intended to disrupt the ALJ's overall RFC determination, unless further limitations are determined to be necessary in light of the ALJ's reconsideration of plaintiff's subjective symptom testimony.

courier.[5] If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform in light of his RFC limitations, including his preclusion from complex or detailed tasks.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 11, 2017

_Paul L. Abrams_
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[5]   Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform his past relevant work as a warehouse worker.

14